## Rice, et al. v. Branch's Administrator, et al.

(Decided October 27, 1925.)

### Appeal from Mason Circuit Court.

Wills—Evidence Required by Scientilla Rule to Warrant Instruction on Undue Influence Must be Something of Substance and Relevant Consequence and Not Vague or Uncertain.—To warrant in-

struction on undue influence in will contest, evidence required by scintilla rule requires something of substance and relevant consequence, and not vague, uncertain or irrelevant matter, not carrying the quality of proof, or having fitness to induce conviction.

J. M. COLLINS, SLATTERY & REES and B. S. GRANNIS for appellants.

WORTHINGTON, BROWNING & REED for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

Mrs. Mary Frances Branch died in the year 1923 in an insane asylum. After her death a paper purporting to be her will and a codicil thereto were probated in the county court. An appeal was taken from the order of the county court probating the will and in the circuit court a verdict and judgment were rendered sustaining the will. The contestants appeal.

Mrs. Branch was the daughter of Thomas Duvall, who owned a farm in Mason county and had a number of children. His wife died in 1876 and after the death of his wife he lived on the farm with his two daughters, Dullie and Mary Frances, Dullie being considerably older than Mary Frances, and the housekeeper. He died in 1890. After his death the farm was divided. The part of the land including the residence fell to Dullie and Mary Frances and they continued to live there. In 1893 Mary Frances married William Branch. She was then forty-five years old and he was twelve years younger. They continued to live there together and on October 13, 1898, Mary Frances made the following will:

> "I will and bequeath to my beloved husband, William Branch, all my property, both real and personal, that I may own at my death, and I will him the aforesaid property to have so long as he lives, but after he is dead I desire what property that was given to him by me to go to the Baptist Orphan Home, at Louisville, Kentucky."

In 1911 Miss Dullie conveyed to William Branch her half of the property in consideration of $2,000.00 and his obligation to take care of her as long as she lived. She died about two years later and after her death some feel-

ing arose between William Branch and her relatives on their claim that he should pay interest on the $2,000.00. He paid the interest but complained. In 1913 he made a will by which he devised everything he had to his wife for life, with remainder to certain of his kindred after her death. In 1915 Mrs. Branch executed a codicil to her will by which she appointed William Branch as her executor and asked that he be allowed to qualify without bond. William Branch died in 1919. After his death Mrs. Branch lived in the house alone and lost her mind and had to be sent to an insane asylum, where she died. The contestants, who were her brothers and sisters and their children, showed by a number of witnesses that Mrs. Branch always was of defective mind; that she had no more mind than a child and was easily influenced; that when anything went contrary to her she would become hysterical and scream and threaten to kill herself or lock herself up in her room.

On the other hand, the contestees showed that she was a woman of ordinary mind; that she was a devoted member of the Baptist church; that she was treasurer of the Sunday school and much of the time she acted as the organist of the church; that she took great interest in orphan children and especially in the Baptist Orphans' Home; that she was agreed upon by all of the children as the administrator of her father, and in fact setled the estate and divided the land; that she knew the value of money and was very economical and was fully competent to make a will.

The court submitted the question of her capacity to make a will to the jury, but he declined to give any instruction on undue influence. This is complained of. It is not complained that there was undue influence by any person, unless it was by William Branch. It is shown that he was a large, strong man, positive in character, and that his wife obeyed him. But there was no evidence that he was present when the will or codicil was written or had any connection with the making of either or knew that either was to be or had been made, or had any connection in any way therewith. It is not unnatural that a good wife should provide for her husband a home for life. In obeying her husband she only followed the rule of her Bible in which she believed, and so far as appears she only did as most good women do. This court has often written that there must be some evidence of undue influ-

ence to submit the question to the jury. The circuit court properly held that there was no evidence here to warrant an instruction on the subject.

"Nor does this conclusion conflict with the scintilla rule, for that rule requires some evidence, even though it be slight; and by evidence is meant something of substance and relevant consequence, and not vague, uncertain or irrelevant matter not carrying the quality of proof, or having fitness to induce conviction." Langford's Exor. v. Miles, 189 Ky. 515.

Judgment affirmed.